UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UPPER ROOM BIBLE CHURCH, INC.** | **CIVIL ACTION** |
| **VERSUS** | **No. 22-3490** |
| **SEDGWICK DELEGATED AUTHORITY, ET AL.** | **SECTION I** |

# ORDER AND REASONS

Before this Court is a motion[1] by defendants Certain Underwriters at Lloyd's London, Indian Harbor Insurance Company, Lexington Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, United Specialty Insurance Company, General Security Indemnity Company of Arizona, HDI Global Specialty SE, Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company (collectively, "the insurers") to compel arbitration and stay the above-captioned proceedings. Also before the Court is a motion[2] by defendant Sedgwick Delegated Authority ("Sedgwick") to dismiss the claims made against it by plaintiff Upper Room Bible Church, Inc. ("Upper Room"). Upper Room opposes both motions. For the reasons below, the Court grants both motions.

---

[1] R. Doc. No. 8.
[2] R. Doc. No. 11.

I.     FACTUAL BACKGROUND

This case arises from two commercial property insurance claims made by Upper Room. Upper Room owns two properties that it alleges were damaged during Hurricane Ida and Tropical Storm Nicolas.[3] At the time of those storms, the properties were insured by the insurers under a surplus lines commercial property insurance policy ("the Policy").[4] Upper Room contends that the insurers failed to make appropriate payments pursuant to the Policy, and has alleged causes of action for breach of contract[5] and breach of the duty of good faith and fair dealing.[6] Upper Room's complaint also names Sedgwick as a defendant, but does not allege that Sedgwick insured the properties at issue. Instead, Upper Room states that Sedgwick "is a foreign third-party underwriter."[7] As is discussed below, Upper Room makes no further allegations against Sedgwick.

The Policy contains an arbitration clause which provides, in relevant part, that "[a]ll matters in difference between the Insured and the Companies . . . in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal[.]"[8]

---

[3] R. Doc. No. 1, ¶¶ 20–22.
[4] *Id.* ¶ 17. The policy is attached to the insurers' motion to compel arbitration. R. Doc. No. 8-3.
[5] R. Doc. No. 1, ¶¶ 64–71.
[6] *Id.* ¶¶ 72–79.
[7] *Id.* ¶ 4.
[8] R. Doc. No. 8-3, at 38.

## II. LAW AND ANALYSIS

### a. Dismissal for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation and quotations omitted).

A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). It "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal quotations omitted). In considering a motion to dismiss, a court views the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

At the motion-to-dismiss stage, the court "limit[s] itself to the contents of the pleadings, including the attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, "documents attached to either a motion to dismiss or an opposition to that motion" may also be considered "when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

As discussed above, Upper Room alleges two claims: breach of contract and breach of the duty of good faith and fair dealing, pursuant to La. Stat. Ann. § 28:1892 and § 22:1973.[9] "In order to succeed on a breach of contract claim, the plaintiff must prove the existence of the contract, a breach of the obligations therein, and damages." *Allday v. Newpark Square | Office Condominium Ass'n, Inc.*, 327 So.3d 566, 574 (La. Ct. App. 2021) (citations omitted). Generally, "[n]o action for breach of contract may lie in the absence of privity of contract between the parties." *Id.*

A non-party to a contract may nevertheless avail itself of the benefit of a contract if it is a third-party beneficiary. *Id.* Pursuant to Louisiana law, "there are three criteria for determining whether contracting parties have provided a benefit for a third party: (1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Id.* (citing *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 939 So.2d 1206, 1212 (La. 2006).

---

[9] R. Doc. No. 1, ¶¶ 63–71 (breach of contract); 72–79 (breach of duty).

4

To recover pursuant to the Louisiana good faith and fair dealing statutes, "a plaintiff must first have a valid, underlying, substantive claim upon which insurance coverage is based." *Q Clothier New Orleans, LLC v. Twin City Fire Ins. Co.*, 535 F. Supp. 3d 574, 588 (E.D. La. 2021) (Lemelle, J.) (quoting *Pelle v. Munos*, 296 So. 3d 14, 25 (La. Ct. App. 2020)).

Sedgwick argues that Upper Room has failed to state a claim for relief against it because Upper Room's claims are based on a contract (the Policy) to which Sedgwick is not a party.[10] In response, Upper Room claims that "[o]n information and belief [there] exist[s] between the Defendants an agreement call[ed] the 'Delegated Claims Administration Agreement['] which sets forth the duties, responsibilities, and obligations of Sedgwick" as relates to Upper Room's claims.[11] Upper Room attaches a sample of such an agreement to its opposition to the instant motion. Upper Room argues that it is a third-party beneficiary of this alleged agreement between Sedgwick and the Insurers.[12]

In ruling on a motion to dismiss, the Court considers whether *the complaint* contains sufficient factual matter to state a plausible claim for relief. *Ashcroft*, 556 U.S. at 678. Upper Room points to no allegations in its complaint that support its argument that it is a third-party beneficiary of a contract between Sedgwick and the

---

[10] R. Doc. No. 11-1, at 2.
[11] R. Doc. No. 18, at 2.
[12] *Id.* at 4.

5

insurers. The complaint makes no mention of such an agreement.[13] The Court therefore cannot reasonably infer, based on the factual allegations in the complaint, that privity of contract exists between Sedgwick and Upper Room, nor that Upper Room is a third-party beneficiary of any contract between Sedgwick and the insurers *Lovick*, 378 F.3d at 437. Without factual allegations supporting an inference that Upper Room is in privity of contract with Sedgwick or is a third-party beneficiary of a contract that Sedgwick has entered into, any claim for breach of contract against Sedgwick fails as a matter of law. *Allday*, 327 So.3d at 574.

Moreover, "reported decisions uniformly hold that the third party administrator cannot be responsible in tort for a failure to pay benefits due under the [insurance] plan." *Tipton v. Northrup Grumman Corp.*, No. 08-1267, 2008 WL 5378129, at *2 (E.D. La. Dec. 22, 2022) (Duval, J.) (citing *Baugh v. Par. Gov't Risk Mgmt. Agency*, 715 So.2d 645, 647 (La. Ct. App. 1998); *Hale v. F.A. Richard & Assocs., Inc.*, 756 So.2d 1261, 1263 (La. Ct. App. 2000); *Nelson v. Cont'l Cas. Co.*, 412 So.2d 701, 705 (La. Ct. App. 1982)).

Any claim against Sedgwick pursuant to the Louisiana good faith and fair dealing statutes likewise fails. A claim pursuant to these statutes cannot succeed if the plaintiff fails to articulate "a valid, underlying, substantive claim upon which insurance coverage is based." *Q Clothier New Orleans, LLC*, 535 F. Supp. 3d at 588.

---

[13] Because the alleged agreement is not "referred to in the pleadings" the Court does not consider the "Sample Delegated Claims Administration Agreement" that Upper Room attaches to its opposition. *Brand Coupon Network, LLC*, 748 F.3d at 63.

6

Moreover, by their terms,[14] these statutes apply to insurers, and Upper Room acknowledges in its complaint and opposition that Sedgwick is a third-party administrator, not an insurer.[15]

Upper Room also argues that its allegations of liability pursuant to § 22:1892 and § 22:1973 "include all relevant provisions of the Louisiana Insurance Code and Louisiana Civil Code 2315."[16] But Upper Room's complaint did not allege any cause of action under, nor even mention, any statute other than the good faith and fair dealing statutes.[17] Therefore, to the extent that Upper Room intended to allege a cause of action against Sedgwick pursuant to some other statute, its complaint failed to "provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc.*, 544 U.S. at 346. For all these reasons, as to Sedgwick, Upper Room's complaint fails to state a claim upon which relief can be granted, and its claims against Sedgwick will be dismissed.

---

[14] La. Stat. Ann. § 1892(A)(1), (2) (imposing duties on "*all insurers* issuing any type of contract") (emphasis added), § 1973(A) ("*An insurer*, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing) (emphasis added).

[15] R. Doc. No. 1, ¶ 4 ("Sedgwick Delegated Authority is a foreign third-party underwriter . . . ."); R. Doc. No. 18, at 3 (referring to Sedgwick as a "third-party administrator").

[16] R. Doc. No. 18, at 2. Louisiana Civil Code Article 2315 states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it" and sets forth types of damages available under Louisiana law.

[17] Upper Room also cites *Williams v. United States Fire Insurance*, 349 So.3d 684 (La. Ct. App. 2022) for the proposition that Sedgwick, as a third-party administrator, is responsible for damages sustained by Upper Room resulting from any unreasonable delay, reduction, or denial of its claim. R. Doc. No. 18, at 3. The portion of the case that Upper Room appears to be referencing interprets La. Stat. Ann. § 22:1821, a statute that governs payment of claims under health and accident policies. *Williams* provides no discernible support for Upper Room's arguments.

7

### b. Motion to Compel Arbitration

Having determined that Upper Room's claims against Sedgwick should be dismissed, the Court turns to the insurers' motion to compel arbitration. The insurers assert that the arbitration agreement falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), as implemented by 9 U.S.C. § 201 *et seq*. The purpose of the Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974). Section 201 of the Federal Arbitration Act ("FAA") provides that the Convention shall be enforced in United States Courts. 9 U.S.C. § 201 ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.").

When applying the Convention, "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; '(3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'" *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)). If these requirements are met, the Convention requires an order of arbitration, unless the court finds that the "agreement is null and void, inoperative or incapable of being performed." *Id.* (citation omitted).

8

The insurers assert all requirements are met in this case, because (1) the insurance contract contains a written agreement to arbitrate "all matters in difference between the Insured and the Companies"; (2) the agreement provides for arbitration in a signatory nation, namely the United States, and specifically in New York; (3) the insurance policy arises out of a commercial legal relationship; and (4) multiple parties to the agreement are not citizens of the United States, as Certain Underwriters consists primarily of syndicates which are citizens of the United Kingdom, and HDI Global Specialty SE is a citizen of Germany.[18] Upper Room does not argue that the requirements of the Convention are not met. The Court therefore finds that the arbitration agreement falls under the Convention.[19]

> i. *Whether the Arbitration Agreement is Valid*

Upper Room argues that the arbitration agreement was negated by an endorsement provision to the insurance contract. This is a question of contract interpretation.[20]

---

[18] R. Doc. No. 8-2, at 9.

[19] In the alternative, defendants assert that the agreement is enforceable pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. The Court finds it unnecessary to reach this argument, as defendants have demonstrated, and Upper Room does not dispute, that the Convention's requirements are met.

[20] Upper Room also argues that because the Court has diversity jurisdiction over this matter, Louisiana law governs the dispute between the parties pursuant to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Upper Room is correct to the extent that state law governs the question of whether the parties entered into a valid agreement to arbitrate. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) ("Whether [the parties] entered a valid arbitration contract turns on state contract law.").

The endorsement provision referenced by Upper Room states that the "insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (USA)."[21] The "Service of Suit Clause (USA)" in turn provides that "in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon . . . will submit to the jurisdiction of a Court of competent jurisdiction within the United States."[22] Upper Room argues that the endorsement and service of suit clause changed the terms of the policy, making it subject to Louisiana law in all respects, and nullifying the arbitration clause.[23]

The Fifth Circuit rejected a similar argument in *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991). In that case, the court held that a service of suit clause similar to that at issue here "could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award." *Id.* at 1205. Since *McDermott*, courts have consistently held that endorsements and service of suit clauses like those in Upper Room's policy do not nullify otherwise valid arbitration agreements. *E.g.*, *Tra-Dor Inc. v. Underwriters at Lloyds London*, No. 21-02997, 2022 WL 3148980, at *4 (W.D. La. July 25, 2022) (applying Louisiana principles of contract formation, and finding no conflict between a service of suit clause and an arbitration clause); *Woodward Design + Build, LLC v. Certain Underwriters at Lloyd's London*, No. 19-14017, 2020

---

[21] R. Doc. No. 13-1, at 1.
[22] *Id.*
[23] R. Doc. No. 13, at 5.

10

WL 5793715, at *3 (E.D. La. Sept. 29, 2020) (Guidry, J.) (finding that defendants did not waive their right to arbitration by issuing endorsement and service of suit provisions nearly identical to those at issue here); *Sw. LTC-Mgmt. Servs. LLC v. Lexington Ins. Co.*, No. 18-491, 2019 WL 1715832, at *5 (E.D. Tex. Mar. 29, 2019) (analyzing similar applicable law endorsement and service of suit clause, determining that they did not negate an arbitration agreement, and collecting cases holding the same).

Following these cases, the Court determines that the endorsement and service of suit clauses in Upper Room's insurance contract with defendants did not negate the arbitration agreement. Instead, the Court "construes the service-of-suit provision as complementing the arbitration clause by providing a judicial forum for compelling or enforcing arbitration." *Sw. LTC-Mgmt. Servs.*, 2019 WL 1715832, at *6.

Upper Room also argues that, because La. Stat. Ann. § 22:868 generally prohibits arbitration agreements in domestic insurance policies, the arbitration agreement is unenforceable. Upper Room is incorrect. The Fifth Circuit has held that the Convention supersedes that state law. *Safety Nat'l Cas. Corp. v. Certain Underwriters At Lloyd's, London*, 587 F.3d 714, 732 (5th Cir. 2009); *accord Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 683 (E.D. La. 2012) (Milazzo, J.) ("[T]he Convention supersedes La. Rev. Stat. § 22:868."); *see also* 9 U.S.C. § 201, *et seq.* (implementing the Convention). Accordingly, the Court concludes that the dispute between the parties must be arbitrated.

>> *ii.* *Stay Pending Arbitration*

Pursuant to 9 U.S.C. § 3, when an issue subject to an arbitration clause is raised in a federal court, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *See also* 9 U.S.C. § 208 (providing that FAA provisions apply to actions governed by the Convention); *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-2326, 2020 WL 7342752, at *12 (E.D. La. Dec. 14, 2020) (Lemelle, J.) (noting that "because the Convention Act incorporates the FAA," parties whose agreements fall under the Convention seek authority for stays pursuant to 9 U.S.C. § 3). Defendants have requested that this matter be stayed. Because the Court has determined that arbitration is mandated in this case, it will stay this litigation until a final judgment of arbitration has been rendered and this Court, following a written motion, has decided that the stay should be vacated.

### III. CONCLUSION

Considering the foregoing reasons,

**IT IS ORDERED** that Sedgwick's motion to dismiss is **GRANTED**. Plaintiff's claims against Sedgwick are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the insurers' motion to compel arbitration is **GRANTED.**

**IT IS FURTHER ORDERED** that this matter is **STAYED** until a final judgment of arbitration has been rendered and this Court, following a written motion, has decided that the stay should be vacated.

New Orleans, Louisiana, December 15, 2022.

                                          **LANCE M. AFRICK**
                                   **UNITED STATES DISTRICT JUDGE**

13